UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
WILLIAM ENOBAKHARE,

                Plaintiff,

                                     **REPORT AND**
                                     **RECOMMENDATION**

                                     08 CV 4798 (ARR)

CARPOINT, LLC, et al.,

                Defendants.
-------------------------------------------------X


        On November 26, 2008, plaintiff William Enobakhare filed this action against defendant

Carpoint, LLC ("Carpoint"),[1] alleging various federal and state law claims stemming from

plaintiff's purchase of a Mercedes Benz S-430 automobile. Despite proper service of the Summons

and Complaint, defendant failed to file an Answer or otherwise appear in this action. The Clerk of

Court entered a notation of default as to defendant Carpoint on May 28, 2010 and the case was

thereafter referred to the undersigned to conduct an inquest and prepare a Report and

Recommendation as to damages.

        On July 8, 2010, the Court held an inquest hearing on the issue of damages; the defendant

failed to appear. Pursuant to the Court's Order during the inquest hearing, plaintiff submitted a

Supplemental Inquest Memorandum in support of a judgment and damages against the defendant on

July 23, 2010.

---

      [1]Plaintiff also initially brought suit against The Penn Warranty Corporation but
voluntarily dismissed his claims against them on April 13, 2009.

                                        1

FACTUAL BACKGROUND

The Complaint alleges that on or about July 25, 2008, plaintiff William Enobakhare, a resident of Nassau County, New York, purchased a Mercedes Benz S-430 automobile from defendant Carpoint, a car dealership incorporated in Pennsylvania. (Compl.[2] ¶¶ 1, 22-23). In the discussions prior to the purchase, plaintiff informed Carpoint that he wanted an automobile that was suitable for long distance travel, would provide reliable transportation, and would have no mechanical problems. (Id. ¶ 8). Plaintiff claims that Carpoint made certain representations that the car was in "perfect" and "good mechanical condition." (Id. ¶ 9). Plaintiff further alleges that the defendant knew that plaintiff would rely on these representations in deciding to purchase the vehicle. (Id. ¶ 8). Plaintiff claims, however, that the automobile had previously been involved in three collisions and that defendant failed to disclose this information when specifically asked if the car had ever been involved in an accident. (Id. ¶ 13). The Complaint further alleges that when plaintiff purchased the car on July 25, 2008, he applied for a six-month express warranty from The Penn Warranty Corporation ("Penn Warranty") (Compl., Ex.[3] 3), which was declined on August 4, 2008. (Compl., Ex. 1).[4]

After plaintiff purchased the car, he allegedly began experiencing numerous mechanical

---

[2]Citations to "Compl." refer to the Complaint, filed on November 26, 2008.

[3]Citations to "Ex." refer to the various exhibits that were submitted with the Complaint.

[4]Although the Complaint alleges that Carpoint was involved in plaintiff's application for an express warranty, that the warranty was "part of the basis of the bargain of [p]laintiff's contract for purchase of the car," and that "[d]efendants . . . [represented] that the car was sold with a 6-month warranty and [d]efendant would fix anything wrong with the car within that period without charge," the documents attached to the Complaint indicate that Carpoint was not actually a party to the express warranty. (Compl. ¶¶ 6, 9). The application for the express warranty explicitly states that the warranty is only between Penn Warranty and the plaintiff and that Carpoint has no liability under the warranty. (Compl., Ex. 3)

problems, including the emission of "hot air, choking smokes[,] and foul odor," internal engine and electrical defects, and trouble with the acceleration and navigation system. (Compl. ¶ 2). As a result of such defects, plaintiff was allegedly "unable to use the vehicle for its intended purpose," and was "greatly inconvenienced." (Id. ¶ 5). Although plaintiff attempted to return the car for repairs at least four times, Carpoint allegedly refused or was unable to repair the defects. (Id. ¶¶ 3, 5). Plaintiff also attempted to file a claim with Penn Warranty on July 30, 2008 for repairs to the car. (Id. ¶ 5; Compl., Ex. 5). However, Penn Warranty declined to provide any repairs, claiming there was no valid express warranty on the vehicle since the plaintiff's application had been declined on August 4, 2008. (Compl., Ex. 1).

Thereafter, plaintiff attempted to revoke his acceptance of the vehicle and to cancel his contract with Carpoint. (Compl. ¶¶ 11-12). In a letter dated September 24, 2008, plaintiff requested the return of all amounts paid for the car, as well as other damages resulting from the transaction. (Id.; Compl., Ex. 4). However, Carpoint refused to cancel the contract or accept the return of the car. (Compl. ¶¶ 5, 11).

On November 26, 2008, plaintiff commenced this action, asserting the following claims against Carpoint and Penn Warranty: (1) violation of the Racketeer Influenced and Corrupt Organizations Act (id. ¶¶ 103-12); (2) violation of the Federal Motor Vehicle Information and Cost Savings Act (id. ¶¶ 85-88); (3) auto sales fraud and deceit (id. ¶¶ 78-84); (4) violation of the Magnuson-Moss Warranty Act (id. ¶¶ 47-52); (5) violation of the Truth-in-Lending Act (id. ¶¶ 21, 74); (6) violation of New York General Business Law § 349 (id. ¶¶ 73-77); (7) breach of express warranty (id. ¶¶ 42-46); (8) breach of implied warranty of merchantability (id. ¶¶ 53-57); (9) breach of implied warranty of fitness (id. ¶¶ 58-61); (10) revocation of acceptance (id. ¶¶ 62-70); (11)

3

breach of the duty of good faith (id. ¶¶ 71-72); (12) violation of the New York Lemon Law (id. ¶¶ 25-41); (13) emotional distress (id. ¶¶ 89-91); (14) conspiracy (id. ¶¶ 99-102); and (15) action against principal and agent.  (Id. ¶¶ 92-98).

Despite proper service, defendant Carpoint has failed to file an Answer, respond to plaintiff's Complaint, or otherwise appear and defend this action.  On May 28, 2010, the Clerk of the Court entered a notation of default against defendant, and plaintiff thereafter filed a motion for default judgment.

Presently pending before this Court on a referral from the district court is plaintiff's motion for a default judgment.  Having received no opposition papers from defendant Carpoint, and noting that defendant failed to appear for the inquest hearing held on July 8, 2010, despite having received due notice thereof, the Court has reviewed only the plaintiff's submissions.  For the reasons stated below, the Court respectfully recommends that the default judgment against defendant Carpoint be vacated and the action be dismissed because the Court lacks subject matter jurisdiction over plaintiff's federal and state law claims.

## DISCUSSION

Rule 55(a) of the Federal Rules of Civil Procedure provides: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  As a threshold issue, Rule 55 sets forth a two-step process which first requires the entry of a default, through a notation on the record that the party has defaulted, and then entry of a default judgment, which is the final action in the case.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir.

4

1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, by notation of the party's default on the clerk's record of the case. See id. After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b).

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988)).

However, in order for the Court to grant plaintiff's request for a default judgment and to award damages, there must be federal jurisdiction over plaintiff's claims. Federal subject matter jurisdiction exists only where there is diversity jurisdiction pursuant to 28 U.S.C. § 1332, or where the action presents a federal question pursuant to 28 U.S.C. § 1331. See Petway v. N.Y.C. Transit Auth., No. 10 CV 1419, 2010 WL 1438774, at *2 (E.D.N.Y. Apr. 7, 2010). Pursuant to 28 U.S.C. § 1332, diversity jurisdiction exists where there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a). Federal question jurisdiction, on the other hand, is invoked where the plaintiff's claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This Court lacks subject matter jurisdiction over plaintiff's Complaint because (1) there is no diversity jurisdiction due to

plaintiff's failure to satisfy the amount in controversy required by 28 U.S.C. § 1332; and (2) federal question jurisdiction is lacking because plaintiff has failed to adequately allege the elements of any of his federal claims. In the absence of both diversity jurisdiction and federal question jurisdiction, the Court may not exercise supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Accordingly, it is respectfully recommended that this action be dismissed for lack of subject matter jurisdiction.

A. Federal Question Jurisdiction

Turning first to plaintiff's claims under the various federal statutes cited in the Complaint, the Court may only exercise jurisdiction pursuant to 28 U.S.C. § 1331 if plaintiff's claims implicate a federal question of law. See Ghartey v. Farnsworth, No. 08 CV 6682, 2010 WL 199691, at *1-2 (S.D.N.Y. Jan. 11, 2010). Federal question jurisdiction is invoked when the plaintiff pleads a "colorable claim 'arising under' the Constitution or laws of the United States." Hill v. Douglas, No. 09 CV 4259, 2010 WL 395817, at *2 (E.D.N.Y. Jan. 15, 2010) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006)).

A court may dismiss a cause of action for lack of federal question jurisdiction where the party has failed to state an adequate claim pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(b); see Petway v. N.Y.C. Transit Auth., 2010 WL 1438774, at *2 (dismissing a complaint for lack of subject matter jurisdiction due to plaintiff's failure to state a claim). Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the Supreme Court's early interpretation of this language, a complaint sufficiently stated a claim unless it appeared

6

"beyond doubt" that the plaintiff could "prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Recently, however, the Court has imposed a heightened pleading standard, interpreting Rule 8(a)(2) to require a well-pleaded complaint to include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Williams v. Time Warner Inc., No. 09 CV 2962, 2010 WL 846970, at *4 (S.D.N.Y. Mar. 3, 2010) (holding that in order to survive a motion to dismiss, a plaintiff must plead facts sufficient to render her Title VII retaliation claim facially plausible). As the Supreme Court stated in Ashcroft v. Iqbal, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. 1938, 1949 (2009).

Under this heightened pleading standard, labels, conclusions, and mere recitation of the elements of a cause of action will not suffice. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. at 555. Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. Ultimately, when the well-pleaded facts allow no more than an inference of a "mere possibility of misconduct" and the plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard of Rule 8(a)(2) has not been satisfied. Ashcroft v. Iqbal, 129 S. Ct. at 1950.

In this case, a review of the allegations in the Complaint demonstrates that plaintiff has failed to adequately plead any of his federal claims.

1. RICO Claim

Plaintiff asserts that defendant violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., in connection with the sale of this vehicle. In order to state a claim under the civil RICO statute, a plaintiff must allege seven elements. Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., No. 05 CV 5934, 2009 WL 3245388, at *3 (E.D.N.Y. Sept. 30, 2009). These include: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Id. The plaintiff must then allege that his injury to business or property occurred by reason of defendant's violation of the RICO statute. Id. at *4.

In the instant case, plaintiff has failed to satisfy the first pleading requirement for a civil RICO claim. In essence, plaintiff's Complaint merely provides a recitation of the elements of a RICO claim without any supporting factual allegations that show an entitlement to "relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. at 1949 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the pleading requirements of the Federal Rules). For example, plaintiff pleads that defendant violated RICO "by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by . . . wrongfully misrepresenting to [p]laintiff through the mail, internet and interstate wire financing the activities of defendants." (Compl. ¶ 110(b)). This assertion is purely a legal conclusion. Nowhere in the Complaint does plaintiff include factual allegations that suggest that defendant was involved in any mail or internet fraud. Similarly, although plaintiff generally alleges that the defendant

8

participated in racketeering activity through "mail, internet and interstate wire," plaintiff does not plead specific facts, such as the date or nature of such communications, indicating that such activities actually took place. (Id.)

The only factual allegation that potentially supports plaintiff's legal assertion is plaintiff's allegation that "in the course of . . . discussions . . . ," the defendants made fraudulent representations to the plaintiff that the car being sold was in perfect condition. (Id. ¶ 9). In addition, plaintiff alleges that defendant, in response to an explicit question about whether the car had been involved in any previous accidents, falsely stated that the vehicle had not been in an accident. (Id. ¶ 13). However, the Complaint fails to contain any information as to whether such representations were made to plaintiff in person, through the mail, or over the phone or internet. In the absence of any specific factual allegations detailing when and through what means these alleged misrepresentations were communicated to plaintiff, it is impossible for the Court to find that plaintiff has adequately pleaded the interstate commerce element of a civil RICO claim.

Additionally, plaintiff has not provided any detail nor pleaded any specific factual allegations to satisfy the substantive element that defendant was involved in an "enterprise." A RICO enterprise is defined as an association of individuals who "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes," First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004), "the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" Id. at 173 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). Again, plaintiff's Complaint contains mere legal conclusions, such as "[d]efendants function as association-in-fact, which constituted an 'enterprise.'" (Compl. ¶ 108).

9

The only facts alleged to even remotely suggest the existence of an enterprise is plaintiff's allegation that Carpoint and Penn Warranty "have devised a scheme to deceive and coerce consumers into parting with their money." (Id. ¶ 17). Plaintiff further claims that "[i]t was the object of the conspiracy that [d]efendants would and did defraud [p]laintiff of assets by wrongfully taking [p]laintiff's" money. (Id. ¶ 106). Not only are such statements more directly related to plaintiff's conspiracy allegations, but the statements are mere legal conclusions without factual support to demonstrate the existence of an "ongoing organization." See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d at 173-75.

For these reasons, plaintiff's Complaint fails to satisfy the pleading requirements of Twombly and Iqbal, insofar as plaintiff alleges a claim under RICO.


2.  Federal Motor Vehicle Information and Cost Savings Act Claim

Plaintiff has also alleged a violation of the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701, et seq. Under this statute, a person transferring ownership of a motor vehicle must give the transferee a written disclosure stating the cumulative mileage registered on the odometer. 49 U.S.C. § 32705(a)(1)(A). Such disclosure must be made in accordance with certain regulations prescribed by the Secretary of Transportation. See 49 U.S.C. § 32705 ("the Federal Odometer Act" or "FOA," a subchapter of the Federal Motor Vehicle Information and Cost Savings Act). Under the relevant regulation, 49 C.F.R. § 580.5, a transferor of a motor vehicle must disclose the mileage to the transferee in writing on the title. 49 C.F.R. § 580.5(c). This written disclosure, which must be signed by the transferor, must also contain the date of the transfer, the transferor's and transferee's names and current addresses, as well as the identity of the vehicle,

10

including its make, model year, body type, and the vehicle identification number. Id. Finally, the transferee is required to sign the disclosure statement, print his name, and return a copy to the transferor. 49 C.F.R. § 580.5(f).

There are two elements to a well pleaded FOA claim; plaintiff must allege: (1) a violation of the Act that is (2) made with the "intent to defraud." 49 U.S.C. § 32710(a); see Owens v. Samkle Auto. Inc., 425 F.3d 1318, 1321 (11th Cir. 2005); In re Nissan N. Am., Inc. Odometer Litigation, 664 F. Supp. 2d 873, 881-82 (M.D. Tenn. 2009). In this case, plaintiff alleges that defendant violated 49 U.S.C. § 32705, with the "intent to defraud plaintiff" (Compl. ¶ 87), by "failing to present the car's certificate to [p]laintiff and failing to obtain the signature of a buyer on that title certificate." (Id. ¶ 86). However, nowhere in the Complaint does plaintiff allege that defendant failed to disclose the mileage registered on the odometer in writing on the title, nor does plaintiff plead that defendant failed to include any of the information required under 49 C.F.R. §§ 580.5(c)(1)-(5), such as the date of transfer, the transferor's and transferee's names and addresses, or the identity of the vehicle.[5]

---

[5]Plaintiff's entire claim under the Federal Motor Vehicle Information and Cost Savings Act consists of the following:

> 85. The allegation of all other paragraphs and claims in these pleadings are incorporated as if fully rewritten herein.
>
> 86. The First Defendant, CarPoint, LLC violated the Federal Motor Vehicle Information and Cost Savings Act and its regulations, by failing to present the car's certificate to Plaintiff and failing to obtain the signature of a buyer on that title certificate, as required by the regulations under the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. Section 32705. See 49 C.F.R. Section 580.5.
>
> 87. The Defendant, CarPoint, LLC violated the Federal Motor Vehicle Information and Cost Savings Act with intent to defraud Plaintiff.
>
> 88. As a result of these violations of the Federal Motor

Although the adequacy of pleadings such as this under the FOA does not appear to have been addressed by many courts, the court in Tuckish v. Pompano Motor Co., found that the plaintiff had satisfied the pleading requirements of 49 U.S.C. § 32705 where he alleged that the defendant car dealership had "failed to provide him with the actual title certificate, for his examination and signature." 337 F. Supp. 2d 1313, 1318 (S.D. Fla. 2004). The court held that the failure to provide the purchaser with a copy of the certificate of title, when such title is available, violates the FOA. Id. Another court stated that:

> Failure to provide a purchaser with a copy of the certificate of title, when such title is available, technically violates the Odometer Act. If the title certificate is not provided to the purchaser, the appropriate mileage is necessarily not disclosed to the purchaser on the title certificate, as required by the Act. It makes no difference that the accurate mileage may be disclosed on a separate form because, absent one of the excusing circumstances in the regulations, the mileage must be disclosed on the title certificate.

Locascio v. Imports Unlimited, Inc., 309 F. Supp. 2d 267, 270 (D. Conn. 2004). Thus, under Tuckish v. Pompano Motor Co., plaintiff has adequately pleaded the first element of his FOA claim by stating that defendant violated the Act by failing to provide the title certificate and failing to obtain plaintiff's signature.

Regardless, however, plaintiff has not adequately pleaded sufficient facts to support the intent requirement of the FOA. Plaintiff's allegation regarding defendant's intent to defraud plaintiff appears to be simply a legal conclusion that is not supported by any factual allegations. Unlike the plaintiff in Tuckish v. Pompano Motor Co., whose allegations of an intent to defraud had

---

Vehicle Information and Cost Savings Act, Defendant is liable to plaintiff in the amount equal to three times actual damages, plus attorney's fees.
(Compl. ¶¶ 85-88).

12

factual support, 337 F. Supp. 2d at 1319 (alleging that the dealership failed to provide an actual title certificate thereby concealing the identity of the previous owner and the fact that the car had been titled to another buyer); see also Mayline Enters., Inc. v. Milea Truck Sales Corp., 641 F. Supp. 2d 304, 308 (S.D.N.Y. 2009), plaintiff's legal conclusion about defendant's intent to defraud contains no specific facts and is a mere recitation of the second element required to establish liability under the FOA.  See also Ashcroft v. Iqbal, 129 U.S. at 1954 (holding that while Rule 9(b) of the Federal Rules allows intent to be pleaded generally relative to the particularity requirement for fraud, a plaintiff may not evade the "less rigid-though still operative-strictures" of Rule 8); Campbell v. Indymac Bank, FSB, No. 09 CV 3182, 2010 WL 419387, at *3 (D. Md. Jan. 29, 2010) (holding that plaintiff did not plead facts sufficient to state a claim of intentional fraud where plaintiff simply provided a conclusory statement saying that defendants had "intended to induce Plaintiff to act in reliance upon their misrepresentation").

Courts in this Circuit have held that "[u]nder the Federal Odometer Act, a defendant can be found to have acted with the requisite 'intent to defraud' without actual knowledge that the mileage is incorrect. . . . [P]laintiff's claim under the Federal Odometer Act requires an intent to defraud, which can be based on actual intent or on gross negligence or recklessness." Harris v. Jamaica Auto Repair, Inc., No. 03 CV 417, 2007 WL 4380280, at *1 n.4, *3 (E.D.N.Y. Dec. 13, 2007); see also Harris v. Auto Repair, Inc., No. 03 CV 417, 2005 WL 1861730, at *3 (E.D.N.Y. Aug. 1, 2005). "It is most in keeping with Congressional intent, therefore, to read the 'intent to defraud' requirement of the Odometer Act as requiring an intent to defraud with respect to the vehicle's mileage and not an intent to defraud with respect to any possible aspect of the sale of the vehicle." Locascio v. Imports Unlimited, Inc. 309 F. Supp. 2d at 270. "[I]n order to withstand a motion for summary

13

judgment motion [sic] on such claims, plaintiff must present evidence from which a fact-finder could rationally conclude that [the defendant] acted with the requisite intent." Harris v. Jamaica Auto Repair, Inc., No. 03 CV 417, 2009 WL 891920, at *1 (E.D.N.Y. Mar. 30, 2009). In the instant case, plaintiff alleges that Carpoint made representations that the car was in "perfect" and "good mechanical condition" and failed to disclose that the car had previously been involved in an accident. (Compl. ¶ 9). Nowhere in the Complaint, however, does plaintiff allege that Carpoint made specific representations regarding the mileage on the vehicle, nor does plaintiff allege that defendant acted with intent to defraud plaintiff as to the vehicle's mileage.[6] Plaintiff merely asserts that "CarPoint, LLC violated the Federal Motor Vehicle Information and Cost Savings Act with intent to defraud Plaintiff." (Id. ¶ 87). As noted in Locascio, intent to defraud with respect to any other aspect of the sale of the vehicle is insufficient to state a claim under FOA.

Accordingly, based on the pleadings, plaintiff has failed to adequately state his claim of an FOA violation under the pleading standards of Twombly and Iqbal.

### 3. Federal Trade Commission Act Claim

Plaintiff also purports to bring a claim under 15 U.S.C. § 45(a) of the Federal Trade Commission Act (the "FTCA"), based on defendant's alleged unfair and deceptive practices in the sale of the automobile at issue. Section 45(a) of the FTCA makes it unlawful to engage in unfair methods of competition and unfair and deceptive acts affecting commerce. 15 U.S.C. § 45(a). However, this statute is only subject to enforcement by the Federal Trade Commission; the

---

[6]The Bill of Sale submitted with the Complaint indicates that, at the time of sale, the odometer read 90,077 miles. (Compl., Ex. 2). Plaintiff does not mention this information in his Complaint, nor does he allege that this number was incorrect.

14

provision does not provide for a private cause of action to consumers or competitors.  See Li Xi v.

Apple Inc., 603 F. Supp. 2d 464, 470 (E.D.N.Y. 2009) (citing Alfred Dunhill Ltd. v. Interstate Cigar

Co., 499 F.2d 232, 237 (2d Cir. 1974)); see also Rotblut v. Ben Hur Moving & Storage, Inc., 585 F.

Supp. 2d 557, 560 (S.D.N.Y. 2008).

Accordingly, plaintiff's FTCA claim is subject to dismissal for lack of standing because 15

U.S.C. § 45(a) does not provide for a private right of action.  See Li Xi v. Apple Inc., 603 F. Supp.

2d at 470.


### 4. Magnuson-Moss Warranty Act Claim

Plaintiff also alleges that defendant's breach of express and implied warranties constitutes a

violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq.  However,

plaintiff's cause of action under this statute fails because plaintiff concededly failed to actually

obtain a warranty for the purchased vehicle.  Moreover, the MMWA requires a jurisdictional

threshold of $50,000, which plaintiff has not met based on the allegations of the Complaint.  15

U.S.C. § 2310 d(3)(B).


### a. Warranty Requirement

The MMWA provides that "a consumer who is damaged by the failure of a supplier,

warrantor, or service contractor to comply with any obligation under this chapter, or under a written

warranty, implied warranty, or service contract, may bring suit for damages . . . ." 15 U.S.C. §

2310(d)(1).  In this case, plaintiff has not alleged that he entered into a service contract with

defendant.  Therefore, in order to allege a claim under the MMWA, the plaintiff must show a breach

15

of a written warranty or implied warranty.

### i. Written Warranty

Plaintiff pleads that defendant breached an "express" warranty by allegedly refusing to repair the malfunctioned vehicle. (Compl. ¶¶ 42-46). However, the MMWA does not actually provide a remedy for breach of an "express" warranty. See 15 U.S.C. § 2310(d)(1) (providing a right of action for "written warranty, implied warranty or service contract"). Therefore, based on plaintiff's Complaint, which alleges a breach of "express, written warranties" (see, e.g., id. ¶ 6), the Court construes plaintiff's claims to be for a breach of an alleged written warranty in violation of the MMWA.

However, upon review of the factual allegations in the Complaint and the supporting exhibits, the Court finds that plaintiff has failed to adequately plead that defendant Carpoint breached a written warranty. Although plaintiff states that the "purchase of the car was accompanied by express warranties offered by [d]efendants" (id.), a close reading of the supporting documentation reveals that plaintiff applied for, but was denied, a written warranty from Penn Warranty, a defendant that has since been dropped from this action. (Compl., Ex. 3). Since Penn Warranty rejected plaintiff's application for this warranty, it appears that the written warranty plaintiff refers to in the Complaint was never valid. (Compl., Ex. 1). Apart from this written warranty, which never became effective, plaintiff has not pleaded that there was any other written warranty that defendant Carpoint breached.

Accordingly, plaintiff has failed to properly plead a cause of action under the MMWA for a breach of a written warranty.

ii. Implied Warranty

Plaintiff also pleads that defendant breached an implied warranty by allegedly refusing to repair the malfunctioning vehicle. As previously discussed, a consumer may bring an action in Federal Court under the MMWA if a supplier has failed to comply with an implied warranty. See 15 U.S.C. § 2310(d)(1). The MMWA defines an implied warranty as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). Therefore, the MMWA confers federal jurisdiction when there is a breach of an implied warranty under state law. See Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006).

Under New York law, a breach of implied warranty exists for merchantable goods where "the seller is a merchant with respect to goods of that kind," U.C.C. § 2-314(1), the product is not "of fair average quality," U.C.C. § 2-314(2), and is not "reasonably fit for its intended purpose." Wojick v. Empire Forklift, Inc., 14 A.D.3d 63, 66, 783 N.Y.S.2d 698, 701 (N.Y. Sup. Ct. 2004) (citing U.C.C. § 2-314(2)(c)). Determining whether a product is not reasonably fit for its intended purpose requires an "inquiry that 'focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.'" Id. (citations omitted). Where the purchased product is an automobile, courts have determined that a car's ordinary purpose is "to enable the purchaser to transport herself upon the streets and highways . . . in a reasonably safe manner." Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d at 541 (quoting McCormack v. Lynn Imports, Inc., 114 Misc. 2d 905, 910-11, 452 N.Y.S.2d 821, 824 (N.Y. Dist. Ct. 1982)).

In this case, based on plaintiff's allegation that defendant is "engaged in the business of a

used car dealership," it is reasonable to assume that defendant is a merchant with respect to the sale of automobiles for purposes of establishing an implied warranty. (See Compl. ¶ 23). Moreover, based on plaintiff's factual allegations that the car had serious engine problems and emitted hot air, choking smoke, and a foul odor (id. ¶ 2), it is reasonable to infer that the car was not fit for its ordinary purpose. Accordingly, plaintiff has sufficiently alleged that defendant's failure to remedy the defective vehicle establishes a breach of implied warranty under New York law, which if proven, would entitle plaintiff to a remedy in federal court pursuant to 15 U.S.C. § 2310(d)(1).

### b. Amount in Controversy Requirement

However, the MMWA also contains a requirement that plaintiff meet a certain required jurisdictional threshold as set forth in 15 U.S.C. § 2310(d)(3)(B). Specifically, the MMWA provides that: "No claim shall be cognizable [in federal court] . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs)." 15 U.S.C. § 2310(d)(3)(B). Thus, a complaint asserting a violation of an implied warranty under state law "is insufficient to confer federal question jurisdiction [under the MMWA]; a separate $50,000 amount in controversy requirement must also be satisfied." Schultz v. Gen. R.V. Ctr., 512 F.3d 754, 757 (6th Cir. 2008).

"To calculate the amount in controversy under [the MMWA] . . . the party asserting federal jurisdiction must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle." Voelker v. Porsche Cars N. Am., Inc., 353 F.3d 516, 521 (7th Cir. 2003). See also Schultz v. Gen. R.V. Ctr., 512 F.3d at 757; Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392,

18

402 (3d Cir. 2004).  In determining what the amount in controversy may be, courts are to "look no farther than the pleadings," and "[i]f it appears to a legal certainty that the claim cannot meet the statutory threshold [of the MMWA], the suit should be dismissed for lack of jurisdiction." Kelly v. Fleetwood Enters., Inc., 377 F.3d 1034, 1037 (9th Cir. 2004) (citations omitted).  In cases where the amount in controversy is not alleged in the pleading, the claim may only be dismissed for lack of jurisdiction if "it appears to a reasonable probability that the claim is [not] in excess of the statutory jurisdictional amount." Marcus v. Quattrocchi, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010) (citations omitted); see also United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 303-06 (2d Cir. 1994) (considering the amount in controversy under 28 U.S.C. § 1332).

In this case, the Complaint fails to allege the purchase price of the allegedly defective vehicle, or the costs incurred by plaintiff in repairs for the vehicle.  Plaintiff has also failed to allege the costs of a replacement vehicle, the present value of the allegedly defective vehicle, or the value that plaintiff received from the allegedly defective vehicle.  Thus, the Court cannot determine if plaintiff's claim satisfies the MMWA jurisdictional amount in controversy requirement.  See Voelker v. Porsche Cars N. Am., Inc., 353 F.3d at 521-22 (holding that because no party had submitted the relevant amounts in calculating the amount in controversy requirement of the MMWA, the Court was "in no position to conclude that jurisdiction . . . existed over the Magnson-Moss claims").

Even a review of the documents submitted with the Complaint indicates that the amount in controversy would not be satisfied here based on the damages that are documented.  See United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark Props. Meriden Square,

Inc., 30 F.3d at 305 (holding that courts may look outside the pleadings to evidence in the record where pleadings are inconclusive as to the amount in controversy under 28 U.S.C. § 1332); see also Scherer v. Equitable Life Assurance Soc'y, 347 F.3d 394, 402 (2d Cir. 2003) (holding that the court was authorized to "look beyond the complaint in determining whether" the plaintiff was entitled to recovery of the amount alleged).  According to the documents submitted with the Complaint, plaintiff purchased the vehicle for $13,400 (see Compl., Ex. 2), and incurred $4,000 in repairs and alternative transportation.  (Compl., Ex. 4).  Without deducting any amount to account for the value plaintiff received from the vehicle or the current value of the car, the amount in controversy is at most $17,400.

Accordingly, because plaintiff has not satisfied his burden to allege that his MMWA claim meets the $50,000 jurisdictional threshold, see Heiko v. Keil Equip. Co., No. 02 CV 7570, 2004 WL 230991, at *2 (S.D.N.Y. Feb. 5, 2004) (holding that the plaintiff holds the burden to prove that his claim meets the statutory jurisdictional amount required by the MMWA), he cannot proceed with a claim under the MMWA in federal court.  See 15 U.S.C. § 2310(d)(3)(B).

### 5. Truth-in-Lending Act Claim

Plaintiff also asserts subject matter jurisdiction through Section 1640 of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.  Under TILA, liability may be imposed on "any creditor who fails to comply with any requirement imposed under" the Act.  15 U.S.C. § 1640; see Veckinburg v. Equifax Info. Servs., LLC, No. 04 CV 0673, 2006 WL 2039969, at *3 (E.D.N.Y. July 21, 2006).  The TILA is a subpart of the Consumer Credit Protection Act, which was designed to ensure that consumers who are given credit are provided with the necessary, meaningful information

20

concerning that credit. TILA further requires that the terms of a consumer credit transaction be fully and clearly explained to potential consumers. "[T]he Truth in Lending Act regulates credit transactions and credit advertising," Till v. SCS Credit Corp., 541 U.S. 465, 482 n.21 (2004), and "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Granucci v. Wells Fargo Bank, N.A., No. 09 CV 4417, 2010 WL 5475613, at *1 (E.D.N.Y. December 17, 2010) (quoting Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998)). TILA defines a creditor as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit . . . and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . ." 15 U.S.C. § 1602(f).

Based on the facts alleged in the Complaint, it does not appear that the defendant Carpoint is a creditor within the meaning of TILA or that the transaction at issue in this case falls under TILA. According to the Complaint and the bill of sale attached thereto, plaintiff provided full payment when he purchased the vehicle (Compl. ¶ 2; Compl. Ex. 2), and there is no allegation in the Complaint that defendant extended credit to plaintiff or that either party had any involvement in a credit transaction. Even if defendant "regularly extends . . . consumer credit" and could be considered a creditor under TILA, plaintiff's claim here does not arise from any misrepresentation in connection with a loan or credit extension. Thus, under the current Complaint, TILA is not applicable to plaintiff's case and the defendant is not subject to liability under TILA. See Veckinburg v. Equifax Info. Servs.LLC, 2006 WL 2039969, at *3 (dismissing plaintiff's TILA claim as without merit where the defendant was a consumer reporting agency and not a creditor).

21

In conclusion, given the lack of federal question jurisdiction over each of plaintiff's federal claims, the Court may only exercise jurisdiction over the related state law claims if diversity jurisdiction exists. See 28 U.S.C. § 1367.

B. Diversity Jurisdiction

Diversity jurisdiction exists only where the plaintiff is a citizen of a different state from that of the defendant, "and the amount in controversy exceeds $75,000." Ghartey v. Farnsworth, 2010 WL 199691, at *1 (citing Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 63 (2d Cir. 2009)); see 28 U.S.C. § 1332. According to the facts alleged in Complaint, complete diversity of citizenship exists between the parties, as plaintiff is from Nassau County, New York, while defendant is incorporated in Pennsylvania. (Compl. ¶¶ 22-23; Pl.'s Aff.[7] ¶ 7). However, plaintiff has failed to satisfy the $75,000 amount in controversy that is required by 28 U.S.C. § 1332.

In the Complaint, plaintiff seeks "$1000 in statutory damages" (Compl. ¶ A(1)), "$500 in damages in violation of U.C.C. . . . [§] 625(e)(4)" (id. ¶ C(5)), and $3,000,000 in punitive damages. (Id. ¶ F). Punitive damages "may be included in determining whether the jurisdictional amount is satisfied," as long as "punitive damages are permitted under controlling law." Fairfield Fin. Mortg. Grp., Inc. v. Luca, 584 F. Supp. 2d 479, 484 (E.D.N.Y. 2008) (quoting A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991)). Under New York Law:

> Punitive damages are not recoverable for an ordinary breach of
> contract as their purpose is not to remedy private wrongs but to
> vindicate public rights. However, where the breach of contract also

---

[7] Citations to "Pl.'s Aff." refer to plaintiff's Affidavit in Support, dated June 25, 2010.

22

> involves a fraud evincing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, punitive damages are recoverable if the conduct was aimed at the public generally.

24/7 Records, Inc. v. Sony Music Entertainment, Inc., 566 F. Supp. 2d 305, 321 (S.D.N.Y. 2008) (quoting Rocanova v. Equitable Life Assur. Soc'y, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 943, 612 N.Y.S.2d 339, 342 (1994)); see also Abeles, Inc. v. Creekstone Farms Premium Beef, LLC, No. 06 CV 3893, 2010 WL 446042, at *10 n.29 (E.D.N.Y. Feb. 1, 2010). "Thus, a private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." Abeles, Inc. v. Creekstone Farms Premium Beef, LLC, 2010 WL 446042, at *10 n.29 (quoting United States ex rel Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 161 (2d Cir. 1996)); see also Rocanova v. Equitable Life Assur. Soc'y, 83 N.Y.2d at 613, 634 N.E.2d at 944, 612 N.Y.S.2d at 342). Therefore, the Court is required to "consider those punitive damages with heightened scrutiny." Nwanza v. Time, Inc., 125 Fed. Appx. 346, 349 (2d Cir. 2005) (citing Zahn v. Int'l Paper Co., 469 F.2d 1033, 1033 n.1 (2d Cir. 1972) (noting that "in computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages")). As the Second Circuit has held, we cannot "allow a plaintiff to meet the amount-in-controversy requirement by demanding $[3],000,000 in punitive damages, when the only actual damages that he claims are unavailable as a matter of law." Id.

In the case at bar, the plaintiff's state law claims include: (1) violation of New York General Business Law § 349 (Compl. ¶¶ 73-77); (2) breach of express warranty (id. ¶¶ 42-46); (3) breach of implied warranty of merchantability (id. ¶¶ 53-57); (4) breach of implied warranty of fitness (id. ¶¶

23

58-61); (5) revocation of acceptance (id. ¶¶ 62-70); (6) breach of the duty of good faith (id. ¶¶ 71-72); (7) violation of the New York Lemon Law (id. ¶¶ 25-41); (8) emotional distress (id. ¶¶ 89-91); (9) conspiracy (id. ¶¶ 99-102); and (10) action against principal and agent. (Id. ¶¶ 92-98). The Complaint contains no allegations that defendant's conduct was aimed at the general public or that it in any way violated public rights.[8]  See Rocanova v. Equitable Life Assur. Soc'y., 83 N.Y.2d at 613, 634 N.E.2d at 943, 612 N.Y.S.2d at 342 (holding that "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights"). Therefore, plaintiff's demand of $3,000,000 in punitive damages should not be considered in calculating the amount in controversy requirement because punitive damages are not permitted in these circumstances under New York law. See Fairfield Fin. Mortg. Grp., Inc. v. Luca, 584 F. Supp. 2d at 484. Accordingly, even if the Court considers the amounts set forth in the documents attached to the Complaint, these total only $17,400;[9] thus, the plaintiff's Complaint fails to satisfy the amount in controversy requirement necessary to sustain diversity jurisdiction.

## CONCLUSION

Having considered each of plaintiff's claims, the Court finds that plaintiff has failed to allege

---

[8]The Complaint does allege that "[d]efendants have devised a scheme to deceive and coerce *consumers* into parting with their money." (Compl. ¶ 17) (emphasis added). Such a statement could be construed to indicate that defendant engaged in conduct that "was part of a pattern of similar conduct directed at the public generally." Fierro v. Gallucci, No. 06 CV 5189, 2010 WL 1223122, at *7 (E.D.N.Y. Mar. 24, 2010) (citing Schonfeld v. Hilliard, 218 F.3d 164, 184 (2d Cir. 2000); Rocanova v. Equitable Life Assur. Soc'y, 83 N.Y.2d at 613, 634 N.E.2d at 944, 612 N.Y.S.2d at 343). However, no factual support is provided for this allegation, and under Iqbal and Twombly, the mere allegation without factual support is insufficient, to state a claim.

[9]See discussion, supra at 18-20.

24

the necessary elements to state a claim under any of the federal causes of action alleged.  Similarly, plaintiff's claims do not fall within the diversity jurisdiction of this Court because the claims do not satisfy the amount in controversy requirement under 28 U.S.C. § 1332.  Accordingly, the Court respectfully recommends that the default against defendant Carpoint be vacated and the case dismissed without prejudice for lack of subject matter jurisdiction over plaintiff's federal and state law claims, allowing plaintiff to proceed in state court.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing ("ECF") system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
        January _10_ , 2011

Cheryl L. Pollak
U.S. Magistrate Judge
Eastern District of New York

25